Our conclusion is that neither the pleadings nor proof discloses any cause of action against the defendant.

For these reasons, the judgment is affirmed.

*Judgment affirmed.*

Ross, P. J., and HILDEBRANT, J., concur.

THE MANSFIELD GENERAL HOSPITAL CORP., APPELLANT,
v. SWANK ET AL., TRUSTEES OF JEFFERSON TWP.,
RICHLAND COUNTY, APPELLEES.

(No. 603—Decided September 30, 1942.)

*Messrs. Henkel & Gongwer,* for appellant.
*Mr. John C. O'Donnell,* acting prosecuting attorney, for appellees.

SHERICK, J: The appellant hospital, as disclosed by its petition, has afforded emergency hospitalization to a number of indigent residents of Jefferson township. This service was not furnished at the instance and request of the township trustees, but by others, who, in the main, were the patients of attending physicians. After admittance, the hospital promptly notified the trustees thereof.

Upon discharge of a patient, plaintiff billed the township trustees for the reasonable value of its services, and they responded by paying such amounts thereon as the trustees, in good faith, deemed reasonable. The sums paid never equaled the amounts asked.

In order that their disputes may be settled, and future guidance afforded, plaintiff brings this action on behalf of itself and other hospitals similarly situated. It is asked that the court determine and declare the statutory duties and obligations resting upon township trustees in such cases. Being dissatisfied with the declaration made by the trial court, plaintiff appeals to this court for its interpretation of the existing

statutory law. It urges that the trial court erred in its conclusions.

Appellant contends that the trustees are duty bound not only to furnish and pay for emergency hospitalization when they initiate it, but are also liable for the reasonable value thereof, when volunteers, presumably physicians and surgeons, bring it about. It urges that this practice can not become abusive for the reason that it always must prove indigency, patient's legal residence within the township, emergency and necessity for service, and the fair and reasonable value thereof. The trustees naturally oppose the latter contention, and assert that their former practice is the extent of their legal duty.

Due to the induction of the prosecutor into military service, no answer was filed to the petition. In this court, however, the acting prosecutor appears upon behalf of the trustees, and insists that Sections 3476 and 3480, General Code, which appellant asks to be construed, have been. repealed by implication by the subsequent enactment of an act for "administration of poor relief," known as Sections 3391 to 3391-13, inclusive, General Code. This matter must first be settled to the dissatisfaction of the appellees if appellant's prayer is to be granted.

It is true that Section 3391 et seq., General Code, is a legislative attempt to create a new set-up for the administration of poor relief. Its evident purpose is, in accordance with present trends, for centralization of responsibility and authority in the county commissioners, rather than township trustees. Section 3391, General Code, divides poor relief into three classes, the third of which is "medical care." This phrase is defined as meaning "medicines and the services, wherever rendered, of a physician or surgeon or the emergency services of a dentist, furnished at public expense." Section 3391-1, General Code, lends cred-

ence to appellees' views. It provides in part, that:
"* * * the territory in each county outside the corporate limits of cities therein shall be a local relief area hereinafter referred to as the 'county local relief area,' the local relief authority for which shall be the board of county commissioners of the county; * * * provided, however, that any board of county commissioners, upon request of the township trustees of any township in the county, shall, by resolution adopted at any time after this act becomes effective, designate such township trustees to act as its agents in the administration of poor relief within such township to the extent provided in such resolution; * * *."

It is further significant that the "county local relief area" is made a local taxing unit, and the "local relief authority" is empowered to levy a tax for poor relief. Section 3391-2, General Code, provides in part that local relief authorities shall administer poor relief, which is defined as meaning sustenance "furnished at public expense to persons in their own homes" (Section 3391, General Code). Section 3391-2 (1), General Code, further provides that:

"Poor relief shall be granted only after sworn application therefor and proper home investigation to ascertain facts of need and available means of support."

Even though Section 3391, General Code, states that, "poor relief may take the form of * * * 'medical care' as herein defined," we think that the quoted phrase concerning sworn application and home investigation pertains particularly to "direct relief." Section 3391-2 (8), General Code, requires quotation. It provides that:

"Except as modified by the provisions of this act, Section 3476 and other sections of the General Code of like purport shall remain in full force and effect and nothing in this act shall be construed as altering,

amending, or repealing the provisions of Section 3476 of the General Code, relative to the obligation of the county to provide or grant relief to those persons who do not have the necessary residence requirements and to those who are permanently disabled or have become paupers and to such other persons whose peculiar condition is such that they can not be satisfactorily cared for except at the county infirmary or under county control.''

Keeping these provisions of Section 3391 *et seq.*, General Code, in mind, together with the fact that nowhere within the act are hospital services or hospitalization considered or legislated upon, and the further fact that the word ''emergency'' appears only in reference to ''services of a dentist,'' it becomes clear that the Legislature was not therein concerned with remuneration of hospitals for services rendered by them in emergency cases brought thereto by volunteers; but it did say that Section 3476, General Code, and kindred sections for certain purposes shall remain in full force and effect.

If this act (effective June 6, 1939) is all embracive it indeed seems strange that at the same legislative session Section 3480-1, General Code (effective date August 30, 1939), was amended. True, this section has no direct applicability to appellant's request for a declaratory judgment. It, however, is impressive because of the certainty that the Legislature recognized nonresident indigents might be in need of emergency medical and hospital services while temporarily absent from their own city or township. As amended, it preserved the primary liability feature of cities and townships for emergency hospital services rendered their indigents while temporarily absent. The change made extends only to the injection of the word ''county'' in four places. It follows therefrom that the act,

that is, Section 3391 *et seq.,* General Code, was never intended to operate upon this particular feature of poor relief. That was to be taken care of by Section 3480-1, General Code.

If the Legislature in adopting the Administration of Poor Relief Act contemplated the continued existence and effectiveness of Section 3480-1, General Code, as it did, it is logical to assume that the emergency hospitalization of resident poor was not completely overlooked. Prior to enactment of Section 3391 *et seq.,* General Code, it had long been the understanding that Sections 3476 and 3480, General Code, were broad enough to impose liability and establish the duty upon cities and townships to furnish and pay for emergency hospital services rendered their resident poor, provided due notice was given as prescribed in Section 3480, General Code. This feature of Sections 3476 and 3480, General Code, was not amended or repealed by the subsequent act. It is our judgment that the Legislature in enacting the Administration of Poor Relief Act studiously avoided making the ''local relief authority'' responsible or the ''local relief area'' liable for the emergency hospitalization of a city's or township's resident or nonresident poor. It could easily have included hospitals with physicians, surgeons and dentists, but it did not do so. It retained, by subsection eight of Section 3391-2, General Code, those portions of Sections 3476 and 3480, General Code, which were not inconsistent with the new act. This might have been due to the fact that many cities and townships operate hospitals or enjoy close working agreements with hospitals. (See *Trustees* v. *White,* 48 Ohio St., 577, 29 N. E., 47.)

It is therefore the finding and declaration of this court:

First: That under the provisions of Sections 3476 and 3480, General Code, township trustees are liable

for emergency hospital services rendered to indigent people who have a legal settlement in their respective townships, in such amount as such trustees determine to be just and reasonable, provided that due notice is given as directed by Section 3480, General Code.

Second: The term "public support or relief" as used in Section 3476, General Code, in conjunction with Section 3480, General Code, now covers only emergency hospitalization.

Third: Township trustees are not now liable for hospital services for people who have a legal settlement therein, in the absence of contract, unless the case be an emergency one.

Fourth: That Section 3480-1, General Code, has no application to the case at bar, where the indigent person is removed to the hospital from the township of legal settlement, even though said hospital is not located in said township.

It follows that inasmuch as this court's understanding is in a number of respects different from the judgment of the Court of Common Pleas, that its judgment be modified as herein stated, and as modified be affirmed.

*Judgment modified and affirmed.*

LEMERT, P. J., and MONTGOMERY, J., concur.